FILED

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
___TAMPA___ DIVISION

2018 JUN 22  PM 12: 35

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

LARRY R. MARSHALL,

        **PLAINTIFF**

    V.

                                **CASE NO.** 8:18-cv-1510-T-36AAS

DEBORAH CLARK,
SUPERVISOR OF ELECTIONS,
PINELLAS COUNTY, FLORIDA

KEN DETZNER,
FLORIDA SECRETARY OF STATE, and

        **DEFENDANTS**

      **PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

      Comes Now, Plaintiff, and prays the Court to grant a Temporary Restraining Order

in the following way and for the following reasons:

      1.Pursuant to Section 101.021 F.S., Plaintiff is denied the right to vote in the closed

      primary on August 28, 2018 unless he selects either a Democratic Party

      ballot or a Republican Party ballot. This totally disenfranchises Plaintiff for said

      Primary Election and is unconstitutional and denies Plaintiff and other

      independent voters the rights to free speech and freedom of association

      as guaranteed by the First and Fourteenth Amendments to the Constitution of the

      United States.

      2.If a Temporary Restraining Order is not issued, Plaintiff and other independent

voters will be irreparably damaged because they will be barred forever from voting in the Primary Election on August 28, 2018.

3.Plaintiff prays the Court to enjoin the Defendants and each of them from enforcing section 101.021 F.S. and to allow Plaintiff and other independent voters to vote in the Primary Election on August 28, 2018.

4.Section 99.095 (3) F.S. requires Plaintiff to file a Petition with the necessary signatures by May 4, 2018 in order to be placed on the Primary Election ballot for August 28, 2018 and the General Election ballot on November 6, 2018. Plaintiff and other third party or independent candidates need adequate time to collect said signatures, to collect the necessary fees and to comply with other aspects of the Florida election laws.

5. There is no compelling state interest to require such an early deadline and said deadline is not the least drastic means which may be used by the Defendants and the State of Florida to regulate the election, thereby violating the rights of Plaintiff and other independent voters to free speech and freedom of association as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

6.Plaintiff prays the Court to enjoin Defendants and each of them from enforcing said petition deadline and setting the deadline for filing petitions at July 31, 2018.

7. Section 105.031 F.S. requires Plaintiff and others to pay the necessary fees by May 4, 2018,

in order to place the name of Plaintiff or any independent candidate or third party

candidate on the ballot for the Primary Election on August 28, 2018 and the General

Election on November 6, 2018.

8.There is no compelling state interest to require Plaintiff or any independent

candidate or third party candidate to pay such fees so early and such early payment

date is not the least drastic means for Defendants and each of them to regulate the

election process, thereby violating the rights of Plaintiff or any independent

candidate or third party candidate to free speech and freedom of association as

guaranteed by the First and Fourteenth Amendments to the Constitution of the

United States.

9. Plaintiff prays the Court to enjoin Defendants and each of them from enforcing

said section 105.031 F.S. and setting the date for payment of fees at August 15,

2018.

10. Such actions as prayed for are necessary to maintain the status quo so that

Plaintiff and other independents will not be barred as a voter or a candidate

from participating in the Primary Election on August 28, 2018.

11.Such actions as prayed for are necessary because Plaintiff and other

independent voters will be barred forever from voting in the Primary Election,

which right may never be regained and as such will irreparably damage Plaintiff and

other independent voters.

12.Such actions are necessary because otherwise Plaintiff and any independent

candidate or third party candidate will be irreparably damaged because they will be barred forever from participating in the Primary Election om August 28, 2018 and the General Election on November 6, 2018,as either a third party candidate or an independent candidate, which happening will irreparably damage Plaintiff and any independent candidate or third party candidate.

13.Such actions as prayed for are in the public interest in that it will allow all independent voters to be eligible to vote in the Primary Election on August 28, 2018 and without such action they will forever lose their right to cast such a vote.

14.There is no harm that will come to Defendants or the State of Florida by allowing Plaintiff and other independent voters to cast a vote in the Primary Election and the injunction will allow a free and open debate about the candidates and the issues.

15.There is no harm that will come to Defendants or the State of Florida by setting a later deadline for filing petitions or paying fees as prayed for herein and such action will allow for free and open debate about the candidates and the issues.

16.Such actions as prayed for will allow Plaintiff and other possible independent candidates or third party candidates to have access to the ballot thereby allowing free and open debate about the candidates and the issue.

17. If Plaintiff is forced to go through the normal pleading process with Notice and service of process, the case will not be at issue until sometime in August by which

time neither Plaintiff nor other independent voters, or independent candidates or

third party candidates will have time to register, file petitions or pay fees to get on

the Primary Election ballot, and even Defendants will not have time to react to

whatever decision the Court may make thus making Plaintiff's Complaint and

Motion moot and of little value, all of which will deny Plaintiff and others their

Constitutional rights as set out herein.

17. An analysis of the law as applied to the facts of this case suggest Plaintiff is likely

to succeed on the merits of the case.

18. Plaintiff has talked with both the Secretary of State's office and the office of the

Supervisor of Elections for Pinellas County and advised them of this lawsuit

but received no agreement about proceeding,

**WHEREFORE**, Plaintiff prays the Court to enter its Temporary Restraining Order

enjoining Defendants and each of them from enforcing Sections 101.021 F.S.,

99.095 (3) F.S. and 105.031 F.S. and allowing Plaintiff and other independent voters

to vote in the Primary Election. On August 28, 2018, setting July 31, 2018 as the

date by which petitions with signatures must be filed and August 15, 2018 as the

date by which fees must be paid in order for Plaintiff, other independent candidates

and third party candidates to be placed on the Primary Election ballot, and

for such other and further relief aa to the Court may seem just and proper.

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF HIS MOTION FOR
<u>TEMPORARY RESTRAINING ORDER</u>**

I

## <u>INTRODUCTION</u>

Plaintiff would start by making clear this litigation is not about what is usually termed "raiding", wherein a member of one of the two major parties tries to sneak into the other party's primary in an attempt to vote for the weakest candidate on the ballot. This case is about the total and complete disenfranchisement of Plaintiff and all independent voters from the primary election in Florida. Neither Plaintiff nor any truly independent voter may vote in the Florida primary unless he/she rejects their independent status and registers to vote for one of the two major parties. Such requirement violates Plaintiff's right of free speech and freedom of association as guaranteed by the First Amendment to the Constitution of the United States and as applied to the states, violates Plaintiff's right to Due Process and Equal Protection as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

II

## <u>UNCONTROVERTED FACTS</u>

Initially, Plaintiff would acknowledge that Article I, Section 4, Clause 1 grants to the

states the right to control the fundamentals of our election process;

"The Times, Places and Manner of holding Elections
for Senators and Representatives, shall be prescribed
in each state by the Legislature thereof, but the
Congress may at any time by law make or alter such
Regulations, except as to the places of chusing Senators."

In response, Florida passed the following law:

Sectiom 101.021 F.S

In a primary election a qualified voter is entitled
to vote the official primary election ballot of the
political party designated in the elector's registration
and no other. It is unlawful for any elector to vote in
a primary for any candidate running for nomination
from a party other than that in which elector is registered.

Section 104.41 F.S, states " Any violation of this code not otherwise provided for is a

misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083,

Section 775.082 6 (A)reads as follow: A person who has been convicted of a

designated misdemeanor may be sentenced as follows:

(a)  For a misdemeanor of the first degree, by a definite term of imprisonment not

exceeding 1 year.


III

**PLAINTIFF'S FUNDAMENTAL CHALLENGES TO FLORIDA LAW**

Plaintiff is challenging four fundamental aspects of the election laws of the

State of Florida.

7

1.  Section 101.021 F.S, of the Florida statutes which requires Plaintiff and any independent voter to select either a Democratic Party ballot or a Republican Party ballot in order to cast a vote i the Primary Election, which this year is set for August 28, 2018.

2.Section 99.095(3) F.S. of the Florida law that requires Plaintiff and any independent candidate or third party candidate, to file a petition by May 4, 2018 with the necessary signatures to put Plaintiff or any independent or third party candidate on the ballot for the Primary Election on August 28, 2018 or on the General Election ballot on November 6, 2018.

3.Section 105.031 F.S. of the Florida law that requires Plaintiff and any independent candidate or third party candidate, to pay the fees by May 4, 2018, necessary to put Plaintiff or any independent or third party candidate on the ballot for the Primary Election on August 28, 2018 or the General Election on November 6, 2018

4.Section 101.021 F.S. of the Florida law or the interpretation of said law that refuses to count votes for Plaintiff or any other independent or third party candidate cast in either the Democratic Party primary or the Republican Party primary as votes for Plaintiff or said independent or third party candidate.

5. Sections 101.021F.S., 104.41 F.S. and 775.082 F.S. of the Florida which calls for a prison sentence of up to 1 year if Plaintiff or any voter votes their conscience and votes for a candidate not on the printed ballot, but does not vote for the listed candidate in either the Democratic Party ballot or the Republican Party ballot.

Plaintiff respectfully suggests that the above laws of the State of Florida, as applied to Plaintiff, any independent voter or any independent or third party candidate are unconstitutional and violate their rights to free speech and freedom of association, as guaranteed by the First Amendment to the Constitution of the United States and as further guaranteed by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States as applied to the several states.

## IV

## THE RIGHT TO VOTE AND FREEDOM OF ASSOCIATION ARE FUNDAMENTAL RIGHTS PROTECTED BY THE CONSTITUTION OF THE UNITED STATES

There can be no doubt that the right to vote and the right of association are two of the most fundamental rights protected by our Constitution. Nothing can be a more important or central to our freedom of speech as guaranteed by our Constitution than the right to vote. This right gives to each citizen an opportunity to exercise their civic duty and and participate in selecting those individuals who will ultimately be responsible for making the laws by which each of us live our daily lives. As stated in *Williams v Rhodes*, 393 U.S. 23, 38 (1968);

> At the root of the problem is the
> right to vote-a "fundamental political
> right" that is "preservative of all rights".
> (citation omitted).

Just as important to each individual is another right protected by our Constitution,

the freedom of association.

Again, as stated in *Williams,* supra, at 38

> "  The First Amendment, made applicable
> to the States by reason of the Fourteenth
> Amendment. lies at the root of these cases.
> The right of association is one form of
> "orderly group activity" protected by the
> First Amendment. (citation omitted)

 Included in that right is the right to form an organization, such as a political party, for the

advancement of beliefs and ideas.

In further support of the fact that the right to vote and freedom of association are

fundamental constitutional rights protected by the Constitution of the United States, see

*Anderson v Celebreeze*, 460 U.S. 780, 787 (1983), *Kusper v Pontikes*, 414 U.S. 51, 56-57

(1973) and *Tashjian v Republican Party of Connecticut*, 479 U.S.208, 214 (1986)


**V**

## SECTION 101.021, AS APPLIED IS UNCONSTITUTIONAL

First of all, the Supreme Court has acknowledged in numerous cases that there

is no litmus test by which the Court will arrive at its conclusion. See *Storer v Brown*, 415

U.S. 724, 730 (1974), *Anderson v Celebreeze*, 460 U.S. 780, 789 (1983) and *Tashjian v Republican Party of Connecticut*, 479 U.S. 208, 213 (1986).

However, the Court has also clearly set out one fundamental premise in its decisions

> "We therefore hold that no State can pass
>  a law regulating elections that violates the
> Fourteenth Amendment's command that
> "No State…shall deny to any person…
> the equal protection of the laws
> *Williams,* supra, at 29

Williams, supra, at 214 however, did establish the standard and considerations for the Court in reaching any decision as to the constitutionality of State action and whether such state action passes constitutional muster. First, the court must consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments; second, the court must identify and evaluate the precise interests put forward by the State as justifications for the burdens imposed by its rule; third, the court must consider the extent to which those interests make it necessary to burden the plaintiff's rights. An evaluation of these standards as applied to the facts herein, make clear the Florida laws challenged herein do not fulfill a compelling state interest and are not the least drastic means to accomplish the purposes of the Defendants and the State of Florida in implementing the laws challenged herein. Consequently, these laws are too burdensome and restrictive on the Constitutional rights of Plaintiff and other independent voters, as well as any independent party and third party candidate.

In this regard, the "closed primary" as operated by the State of Florida totally disenfranchises Plaintiff and any other independent voter who does not register as a Democrat or Republican. Plaintiff and any independent voter or any voter who refuses to choose a Democratic Party or Republican Party ballot is prohibited from voting in the Primary Election. PERIOD!!!  This is critical because in many cases the Primary Election is where the individual races are decided. Today there is seldom a Democrat or a Republican who doesn't rely on some independent votes. Plaintiff and others have absolutely no alternative in the Primary Election but to be a Democrat or a Republican or they can't vote. Which means, Plaintiff and other independents have no opportunity to make their choice known for the General Election. This is true even if Plaintiff or others may want to vote for a Democrat or a Republican for a particular office. They can't. Their only hope is that if they have a Democrat or Republican candidate they prefer, they must, of necessity, hope he/she wins the Primary Election. It is hard to imagine a more severe restriction could be placed on Plaintiff or other independent voters than the State of Florida has in this instance. How could any rational argument be made that would give the State the authority to disenfranchise all its independent voters, however many there are. Both *William*s, supra, at 31-33, and *Anderson*, supra, at 787, make clear that the right to vote is "heavily burdened" if that vote may be cast only for major party candidates. Yet that is exactly what the State of Florida has done. While the state may have a legitimate interest in controlling the election process, that simply isn't enough to burden and restrict the right to vote as the State has here. See also *Illinois State Board of Elections v Socialist Workers*

*Party,* et al, 440 U.S. 173, 185 (1979) and *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973).

Section 101.021 F.S. as Implemented by Defendants and the State of Florida is far

from the least drastic means to accomplish their purpose of controlling and regulating the

election process in the State. Thus, it fails miserably in its attempt to meet the standards

established in *Williams*, supra, at 31-33 and *Illinois State Board of Education*, supra, at

185.

In addition to finding the least drastic measure to implement its purpose in

regulating and controlling the election process, the State "may not choose a means that

unnecessarily restricts a constitutionally protected liberty such as free speech and freedom

of association. See *Illinois State Board of Elections*, supra, at 185 and *Kusper*, supra, at 58-

59. The facts clearly show that implementation of Section 101.021 F.S. by Defendants gives

Plaintiff and other independent voters no options whatsoever. They either declare for the
Democratic

or Republican Party or they may not vote in the Primary Election. That is a total restriction

of their right to vote. In *Kuspe,r* supra, at 60-61, the Court noted that Illinois law prohibited

Pontikes from voting in the Democratic primary in 1972 because she had voted in the

Republican primary in 1971. Thus, as the Court noted,  she was locked into a particular

party and the only way to break the lock was to not vote for 2 years. Still the Supreme

Court said that was too restrictive. Here, Plaintiff and other independent voters are being

permanently barred from voting in the Primary Election forever, unless they basically

declare allegiance to the Democratic Party or the Republican Party. That cannot possibly be

13

considered the least drastic means for conducting this aspect of the election.

There is simply nothing in the election history of the United States that says an individual must declare his allegiance to one party or the other before he is allowed to vote. While in many cases that has been the resultant effect of the election laws of some states, this does not now nor has it ever made it right, as the Supreme Court has made clear consistently in its cases over the years. Today, with the huge outpouring of independent voters, the closed primary is of less value, if it ever did have value. Recent national polls have stated that almost 40% of the voting populace considers themselves to be independents and not aligned with either of the two major parties. In the State of Florida, a recent poll showed that roughly 27% of the voting populace identifies as Independent or other. See Exhibit A attached hereto and incorporated herein by reference as though fully set out herein. How can it reasonably be argued that it is the least drastic means and a compelling State interest to prevent over one quarter of the voters in the State of Florida from voting in the Primary Election.' No rational person in this land of freedom can possibly make such an argument. Freedom of speech is one of our most cherished freedoms. Nowhere is that freedom more pointed or important than our given right to vote for the candidate of our choice who will be in position to make the laws and regulations by which we live our daily lives. It is almost offensive to suggest that as an American, Plaintiff and other independent voters don't have the right to choose the party or issue of their choice and to vote for that candidate with whom they have the most confidence in fulfilling those goals.

Finally, the most ludicrous and frightening part of this law is the penalty portion, which makes it unlawful to vote for anyone other than the candidates on your particular ballot, be it Democratic or Republican. Section 104.41 F.S. specifically states that any violation of the election code which does not provide for a penalty is a first degree misdemeanor. Under Section 775.082 F.S. 6(A)(a) the penalty for conviction of a first degree misdemeanor is "imprisonment not to exceed 1 year'. This is unconscionable to say the least. To think that If Plaintiff or any other independent voter takes a Democrat or Republican ballot, but votes for someone other than those available on the ballot, they are subject to prison is beyond the pale. This is the action of Xi's China or Putin's Russia, where the voting is controlled as in most totalitarian and dictatorial regimes. This is not the action of the United States of America. To be imprisoned for voting your conscience is something that should never even be discussed in the United states of America, let alone put into law, but here it is. There is no way any rational, reasonable person could possibly argue that this fulfills some compelling state interest and it is certainly not the least drastic means to accomplish the regulation of the election process.

Consequently, Plaintiff respectfully suggests that Section 101.021 as administered by Defendants, including the penalty provisions, is unconstitutional as a violation of the right of free speech and freedom of association of Plaintiff and other independent voters as guaranteed by the First Amendment to the Constitution of the United States and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the

Constitution of the United States as applied to the states.

**VI**

**DEADLINES FOR PAYING FEES AND SUBMITTING PETITIONS ARE TOO RESTRICTIVE**

If Plaintiff chooses to run as an independent candidate or on a newly established third party he must submit any Petition with signatures to the election supervisor on or before May 4, 2018 for the Primary Election on August 28, 2018 and the General election on November 6, 2018. State law would require Plaintiff to secure 1% of the total registered voters in the district he chooses to run for office, which this year is 5125 signatures of such qualified voters. In lieu thereof, Plaintiff may pay a fee of $10, 440.00 to be placed on the ballot but those fees must be paid on or before May 4, 2018 for the Primary Election on August 28, 2018 or the General Election on November 6, 2018.In Anderson, supra, at 800, the candidate was required to secure 145,000 signatures and the Court said that 75 days should be enough to count the signatures and determine if Anderson should be on the ballot. That decision was almost forty (40) years ago and we all know how far technology has advanced since then. That being the case, what possible urgency exists in this day to require Plaintiff to submit his 5125 signatures by May 4, 2018, which is 116 days before the Primary Election and 180 days before the General Election. Once again, it is hard to argue that the state has a compelling interest in such early deadlines, let alone argue such deadlines are the least drastic means to accomplish their purpose of having the signatures in time to place Plaintiff or any other independent candidate on the ballot for the Primary Election or the General Election.

Furthermore, it is even more absurd to suggest that the fees must be paid by May 4, 2018 for the Primary or General Elections. There is nothing to confirm, other than the check is in the correct amount, it is valid and will be paid, which will happen in days, Indeed, if Plaintiff pays the necessary fees on or before August 15, 2018 that should be more than enough time in this day and age of computers and electronic voting. Likewise, it would seem practical that July 31, 2018 is sufficient time to present 5125 signatures, especially to be placed on the General Election ballot. Both of these deadlines would seem to be sufficient to meet the State's compelling interest and be the least drastic means available. Certainly, both of said dates as suggested by Plaintiff, are far less drastic that the dates enforced by the

Defendants.

Furthermore, these deadlines enforced by Defendants, make it difficult for a new political party and its supporters to get organized in time to be competitive in any election. This restriction is simply unacceptable in today's election process. As stated in *Democratic Party of United States v Wisconsin ex rel La Follette* 450 U.S. 107, 122 (1981);

> "Any interference with the freedom of a
> party is simultaneously an interference with
> the freedom of its adherents.
> quoting *Sweeney v New Hampshire*,
> 354 U.S. 234, 259 (1958).

In addition, any claim by the state of increased costs by extension of the deadlines for either candidates or parties cannot justify the deadlines enforced by the Defendants. As stated in *Tashjian,* supra, at 218,

17

> "… the possibility of future increases in
> the cost of administering the election
> system is not a sufficient basis here for
> infringing appellees First Amendment rights.
>
> "… But the State could not forever protect
> the existing major parties from competition
> solely on the grounds that two major parties
> are all the public can afford."
> *Tashjian*, supra at 218 Citing *Anderson,* supra
> and *Williams*, supra

Any and all deadlines enforced by Defendants, pursuant to state law, in the final

analysis are primarily for the protection of the Democratic and Republican Parties and

nothing more. In *Anderson,* supra, at 802, the Court stated that

> " In Williams v Rhodes we squarely held that
> protecting the Republican and Democratic
> Parties from external competition cannot
> justify the virtual exclusion of other political
> aspirants from the political arena."

Going further, the Court in *Anderson*, supra, at 802, stated, "… Competition in ideas and

governmental policies is at the core of our electoral process and First Amendment

Freedoms."

This issue was expanded on In Williams, supra, at 39;

> "All political ideas cannot and should not
> be channeled into the programs of our two
> major parties. History has amply proved the
> virtue of political activity by minority, dissident
>  groups, which innumerable times have been
> in the vanguard of democratic thought and
> whose programs were ultimately accepted....
> the absence of such voices would be a symptom

of grave illness in our society."

Because the deadline for signatures and payment of fees, as established, fail to meet a compelling state interest and are certainly not the least drastic means available to satisfy Defendants' needs, Plaintiff respectfully suggests said deadlines violate the rights of Plaintiff and other voters, candidates and parties to free speech and freedom of association as guaranteed by the First Amendment to the Constitution of the United States and as guaranteed against state action by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

## VI
## VOTES FOR PLAINTIFF AND OTHER CANDIDATES SHOULD BE THEIRS

Finally, should the Court decide that Plaintiff and other independent voters may vote in the Primary Election, any votes cast for Plaintiff or other independent candidates or third party candidates in such Primary, should be counted for Plaintiff or such candidates and not as a Democratic or Republican vote. Any other manner in counting votes denies the truth of the votes cast and further supports the two established parties to the exclusion of a new party or an independent candidate. Plaintiff obviously has the right to seek his place on the Primary Election ballot and General Election ballot as either an independent candidate or a third party candidate, as do others. To give veracity and substance to the electoral process, votes for Plaintiff should rightly be his. If in casting votes for Plaintiff, those votes total 5125 or more, as required in the petition process, Plaintiff respectfully

suggests that such total in the Primary Election should be sufficient to place his

name on the General Election ballot. There is no burden on Defendants and each of

them to do so. Since it is presumed all voters are duly registered when they cast

their ballot in the Primary Election legality and registration are not an issue.

The argument for protecting the Constitutional rights of independent or new and

small party candidates has been made numerous times by the Supreme Court in

considering our First Amendment rights and those rights as applied to the states by the

Fourteenth Amendment. In *Anderson,* supra, at 793, the Court stated:

> "A burden that falls unequally on new or
> small political parties or on independent
> candidates impinges, by its very nature, on
> associational choices protected by the First
> Amendment. It discriminates against those
> Candidates and – of particular importance
> – against those voters whose political preferences
> lie outside the existing political parties"
> (citation omitted)

The impact of independent voters and independent candidates cannot be ignored,

nor can their ideas and positions on the issues facing our nation.be relegated to the dust

heap. Rather, it is incumbent upon the electoral process to follow these issues and allow

those candidates, parties, and most important, those ideas to surface for the consideration

of the voters and the debate that inevitably follows. This public discourse has long been a

hallmark of our democratic society and our Constitutional Republic. Nothing can justify

stifling that discussion today. In fact, it could be argued that with the complexity of our

society and the world in which we live, that open debate and discussion is more important

today, than ever before.

Respectfully submitted,

*Larry R. Marshall*

Larry R. Marshall, pro se
Attorney at Law
2198 Clover Hill Rd.
Palm Harbor, FL 34683
727-940-4505 (h)
727-212-1743 ©
lrmarshall37@hotmail.com
Missouri Bar # 18168