FILED

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

2018 JUL 13 PM 1:32

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

**LARRY R. MARSHALL,**

**PLAINTIFF**

V.                                          **CASE NO. 8:18-CV-1510-T-36 AAS**

**DEBORAH CLARK,**
**SUPERVISOR OF ELECTIONS,**
**PINELLAS COUNTY, FLORIDA**

**KEN DETZNER,**
**FLORIDA SECRETARY OF STATE, and**

**DEFENDANTS**

**PLAINTIFF'S MOTION FOR**
**PRELIMINARY INJUNCTION**

Comes Now, Larry R. Marshall, Plaintiff herein, and prays the Court to grant a

Preliminary Injunction, against Deborah Clark and Ken Detzner, Defendants herein, and

each of them, in the following manner:

1. Enjoining Defendants, and each of them, from requiring Plaintiff and any other

independent voters to register as a Democrat or Republican as required by

Section 101.021 F.S.

2. Enjoining Defendants, and each of them, from requiring Plaintiff and any other

independent candidate or third party candidate to file by May 4, 2018 his

petition with the required signatures in order to be placed on the Primary

1

Election ballot or the General Election ballot pursuant to Section 99.095 (3) F.S.

3.Enjoining Defendants, and each of them, from requiring Plaintiff or any other independent candidate or third party candidate to pay by May 4, 2018 the necessary fees required in order to be placed on the Primary Election or General Election ballot pursuant to Section 105.031 F.S.

4.Enjoining Defendants, and each of them, from reporting as a violation, any vote cast in the Primary Election by Plaintiff or any other independent voter, if they take a Democratic Party ballot or a Republican Party ballot and then vote for Plaintiff or any other independent or third party candidate not on said ballot.

5.Enjoining Defendants, and each of them, from refusing to count votes in the Primary Election for Plaintiff or any other independent or third party candidate because they are not registered as a Democrat or a Republican.

6.Requiring Defendants, and each of them, to place Plaintiff or any other independent or third party candidate on the General Election ballot if any of said candidates receives votes equal to or greater than the number of votes required on petitions in order to be placed on the Primary Election ballot.

7. Requiring Defendants, and each of them, to permit Plaintiff and any other independent voter to vote in the Primary Election.

8. Requiring Defendants, and each of them, to provide a universal ballot or such other ballot as will allow Plaintiff and any other independent voter to cast a ballot for the candidate of their choice regardless of party affiliation.

2

9. Ordering Defendant Ketzzner to notify all election officials in the State of Florida about the Court's ruling and ordering them to comply with said ruling.

**WHEREFORE,** Plaintiff prays the Court to grant a Preliminary Injunction as prayed for herein and for such other and further relief as to the Court may seem just and proper.

<u>**STATEMENT OF THE BASIS FOR THE REQUEST**</u>

As the basis for his claim herein, Plaintiff would assert that he is a resident of the State of Florida and a registered voter in Pinellas County, Florida. As such he is entitled to vote in the Primary Election. However, Section 101.021 F.S. states that the Primary Election is a closed election and in order to vote in said election, Plaintiff must register as either a Democrat or a Republican. In addition, at the Primary Election, Plaintiff will only receive that ballot representing the political party for which he has registered.

Further, Plaintiff has been advised by the offices of both Defendants, that should he vote for himself or any independent candidate, his vote will not be counted. Plaintiff was also advised that no petitions nor fees required in order to be placed on the Primary Election ballot will be accepted after May 4, 2018.

Plaintiff believes he has a constitutional right to vote and nothing in our Constitution requires Plaintiff or any other voter to register as either a Democrat or Republican.

The result of Florida law is to disenfranchise Plaintiff and all independent voters from participating in the Primary Election.

In order for Plaintiff and other independent voters, as well as Defendants,  to be

prepared for the Primary Election, an injunction is necessary due to existing time

constraints.

**PLAINTIFF'S MEMORANDUM
IN SUPPORT OF HIS MOTION FOR
PRELIMINARY INJUNCTION**

I

**UNCONTROVERTED FACTS**

Initially, Plaintiff would acknowledge that Article I, Section 4, Clause 1 grants to the

states the right to control the fundamentals of our election process;

> "The Times, Places and Manner of holding Elections
> for Senators and Representatives, shall be prescribed
> in each state by the Legislature thereof, but the
> Congress may at any time by law make or alter such
> Regulations, except as to the places of chusing Senators."

Section 101.021 F.S permits a voter to vote only for the party for which he/she has

registered. Said section also makes it unlawful to vote for any candidate not on the ballot

of the voter's choice and Section 775.082 sets the punishment for such a vote at up to one

year in prison.

In addition, Section 99.095 F.S. sets the date for filing petitions with signatures in

order to get on the ballot and Section 105.031 sets the deadline for paying fees in order to

get on the ballot. The deadlines for both signatures and fees is May 4, 2018.

### THE RIGHT TO VOTE AND FREEDOM OF ASSOCIATION ARE FUNDAMENTAL RIGHTS PROTECTED BY THE CONSTITUTION OF THE UNITED STATES

There can be no doubt that the right to vote and the right of association are two of the most fundamental rights protected by our Constitution. Nothing can be a more important or central to our freedom of speech as guaranteed by our Constitution than the right to vote. This right gives to each citizen an opportunity to exercise their civic duty and and participate in selecting those individuals who will ultimately be responsible for making the laws by which each of us live our daily lives. As stated in *Williams v Rhodes*, 393 U.S. 23, 38 (1968);

> At the root of the problem is the right to vote-a "fundamental political right" that is "preservative of all rights". (citation omitted).

Just as important to each individual is another right protected by our Constitution, the freedom of association.

Again, as stated in *Williams,* supra, at 38

> " The First Amendment, made applicable to the States by reason of the Fourteenth Amendment. lies at the root of these cases. The right of association is one form of "orderly group activity" protected by the First Amendment. (citation omitted)

Included in that right is the right to form an organization, such as a political party, for the advancement of beliefs and ideas.

In further support of the fact that the right to vote and freedom of association are

fundamental constitutional rights protected by the Constitution of the United States, see

*Anderson v Celebreeze*, 460 U.S. 780, 787 (1983), *Kusper v Pontikes*, 414 U.S. 51, 56-57

(1973) and *Tashjian v Republican Party of Connecticut*, 479 U.S.208, 214 (1986).


### III


### SECTION 101.021 F.S. IS UNCONSTITUTIONAL

First of all, the Supreme Court has acknowledged in numerous cases that there

is no litmus test by which the Court will arrive at its conclusion. See *Storer v Brown*, 415

U.S. 724, 730 (1974), *Anderson v Celebreeze*, 460 U.S. 780, 789 (1983) and *Tashjian v*

*Republican Party of Connecticut*, 479 U.S. 208, 213 (1986).

However, the Court has also clearly set out one fundamental premise in its

decisions

> "We therefore hold that no State can pass
>  a law regulating elections that violates the
>  Fourteenth Amendment's command that
>  "No State...shall deny to any person...
>  the equal protection of the laws
>  *Williams,* supra, at 29

Williams, supra, at 214 however, did establish the standard and considerations for

the Court in reaching any decision as to the constitutionality of State action and whether

such state action passes constitutional muster. First, the court must consider the character

and magnitude of the asserted injury to the rights protected by the First and Fourteenth

Amendments; second, the court must identify and evaluate the precise interests put forward by the State as justifications for the burdens imposed by its rule; third, the court must consider the extent to which those interests make it necessary to burden the plaintiff's rights. An evaluation of these standards as applied to the facts herein, make clear the Florida laws challenged herein do not fulfill a compelling state interest and are not the least drastic means to accomplish the purposes of the Defendants and the State of Florida in implementing the laws challenged herein. Consequently, these laws are too burdensome and restrictive on the Constitutional rights of Plaintiff and other independent voters, as well as any independent party candidate and any third party candidate.

In this regard, the "closed primary" totally disenfranchises Plaintiff and any other independent voter who does not register as a Democrat or Republican. Plaintiff and any independent voter or any voter who refuses to choose a Democratic Party or Republican Party ballot is prohibited from voting in the Primary Election.. Today there is seldom a Democrat or a Republican who doesn't rely on some independent votes. Plaintiff and others have absolutely no alternative in the Primary Election but to be a Democrat or a Republican or they can't vote. Which means, Plaintiff and other independents have no opportunity to make their choice known for the General Election. This is true even if Plaintiff or others may want to vote for a Democrat or a Republican for a particular office. They can't. Their only hope is that if they have a Democrat or Republican candidate they prefer, they must, of necessity, hope he/she wins the Primary Election. It is hard to imagine a more severe restriction could be placed on Plaintiff or other independent voters than the

State of Florida has in this instance. How could any rational argument be made that would give the State the authority to disenfranchise all its independent voters, however many there are. Both *William*s, supra, at 31-33, and *Anderson*, supra, at 787, make clear that the right to vote is heavily burdened" if that vote may be cast only for major party candidates. Yet that is exactly what the State of Florida has done. While the state may have a legitimate interest in controlling the election process, that simply isn't enough to burden and restrict the right to vote as the State has here. See also *Illinois State Board of Elections v Socialist Workers Party,* et al, 440 U.S. 173, 185 (1979) and *Kusper v. Pontikes*, 414 U.S. 51, 58-59 (1973).

Section 101.021 F.S. is far from the least drastic means to accomplish their purpose of controlling and regulating the election process in the State. Thus, it fails miserably in its attempt to meet the standards established in *Williams*, supra, at 31-33 and *Illinois State Board of Education*, supra, at 185.

In addition to finding the least drastic measure to implement its purpose in regulating and controlling the election process, the State "may not choose a means that unnecessarily restricts a constitutionally protected liberty such as free speech and freedom of association. See *Illinois State Board of Elections*, supra, at 185 and *Kusper*, supra, at 58-59. The facts clearly show that implementation of Section 101.021 F.S. by Defendants gives Plaintiff and other independent voters no options whatsoever. They either declare for the Democratic or Republican Party or they may not vote in the Primary Election. That is a total

restriction of their right to vote. In *Kusper,* supra, at 60-61, the Court noted that Illinois law prohibited Pontikes from voting in the Democratic primary in 1972 because she had voted in the Republican primary in 1971. Thus, as the Court noted, she was locked into a particular party and the only way to break the lock was to not vote for 2 years. Still the Supreme Court said that was too restrictive. Here, Plaintiff and other independent voters are being permanently barred from voting in the Primary Election forever, unless they basically declare allegiance to the Democratic Party or the Republican Party. That cannot possibly be considered the least drastic means for conducting this aspect of the election.

There is simply nothing in the election history of the United States that says an individual must declare his allegiance to one party or the other before he/she is allowed to vote. While in many cases that has been the resultant effect of the election laws of some states, this does not now nor has it ever made it right, as the Supreme Court has made clear consistently in its cases over the years. Today, with the huge outpouring of independent voters, the closed primary is of less value, if it ever did have value. Recent national polls have stated that almost 40% of the voting populace considers themselves to be independents and not aligned with either of the two major parties. In the State of Florida, a recent poll showed that roughly 27% of the voting populace identifies as Independent or other. How can it reasonably be argued that it is the least drastic means and a compelling State interest to prevent over one quarter of the voters in the State of Florida from voting in the Primary Election.' No rational person in this land of freedom can possibly make such an argument. Freedom of speech is one of our most

9

cherished freedoms. Nowhere is that freedom more pointed or important than our given right to vote for the candidate of our choice who will be in position to make the laws and regulations by which we live our daily lives. It is almost offensive to suggest that as an American, Plaintiff and other independent voters don't have the right to choose the party or issue of their choice and to vote for that candidate with whom they have the most confidence in fulfilling those goals.

Finally, the most ludicrous and frightening part of this law is the penalty portion, which makes it unlawful to vote for anyone other than the candidates on your particular ballot, be it Democratic or Republican. Section 104.41 F.S. specifically states that any violation of the election code which does not provide for a penalty is a first degree misdemeanor. Under Section 775.082 F.S. 6(A)(a) the penalty for conviction of a first degree misdemeanor is "imprisonment not to exceed 1 year'. This is unconscionable to say the least. To think that If Plaintiff or any other independent voter takes a Democrat or Republican ballot, but votes for someone other than those available on the ballot, they are subject to prison is beyond the pale. This is the action of Xi's China or Putin's Russia, where the voting is controlled as in most totalitarian and dictatorial regimes. This is not the action of the United States of America. To be imprisoned for voting your conscience is something that should never even be discussed in the United states of America, let alone put into law, but here it is. There is no way any rational, reasonable person could possibly argue that this fulfills some compelling state interest and it is certainly not the least drastic

means to accomplish the regulation of the election process.

Consequently, Plaintiff respectfully suggests that Section 101.021 F.S., including the penalty provisions, is unconstitutional as a violation of the right of free speech and freedom of association of Plaintiff and other independent voters as guaranteed by the First Amendment to the Constitution of the United States and the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United states as applied to the states.

IV

### DEADLINES FOR PAYING FEES AND SUBMITTING PETITIONS ARE TOO RESTRICTIVE AND THEREFORE UNCONSTITUTIONAL

If Plaintiff chooses to run as an independent candidate or on a newly established third party he must submit any Petition with signatures to the election supervisor on or before May 4, 2018 for the Primary Election on August 28, 2018 and the General election on November 6, 2018. State law would require Plaintiff to secure 1% of the total registered voters in the district he chooses to run for office, which this year is 5125 signatures of such qualified voters. In lieu thereof, Plaintiff may pay a fee of $10, 440.00 to be placed on the ballot but those fees must be paid on or before May 4, 2018 for the Primary Election on August 28, 2018 or the General Election on November 6, 2018.In Anderson, supra, at 800, the candidate was required to secure 145,000 signatures and the Court said that 75 days should be enough to count the signatures and determine if Anderson should be on the ballot. That decision was almost forty (40) years ago and we all know how far technology has advanced since then. That being the case, what possible urgency exists in this day to

require Plaintiff to submit his 5125 signatures by May 4, 2018, which is 116 days before the Primary Election and 180 days before the General Election. Once again, it is hard to argue that the state has a compelling interest in such early deadlines, let alone argue such deadlines are the least drastic means to accomplish their purpose of having the signatures in time to place Plaintiff or any other independent candidate on the ballot for the Primary Election or the General Election.

Furthermore, it is even more absurd to suggest that the fees must be paid by May 4, 2018 for the Primary or General Elections. There is nothing to confirm, other than the check is in the correct amount, it is valid and will be paid, which will happen in days, Indeed, if Plaintiff pays the necessary fees on or before August 15, 2018 that should be more than enough time in this day and age of computers and electronic voting. Likewise, it would seem practical that July 31, 2018 is sufficient time to present 5125 signatures, especially to be placed on the General Election ballot. Both of these deadlines would seem to be sufficient to meet the State's compelling interest and be the least drastic means available. Certainly, both of said dates as suggested by Plaintiff, are far less drastic that the dates called for by state law and implemented by the Defendants.

Furthermore, these deadlines enforced by Defendants, make it difficult for a new political party and its supporters to get organized in time to be competitive in any election. This restriction is simply unacceptable in today's election process. As stated in *Democratic Party of United States v Wisconsin ex rel La Follette* 450 U.S. 107, 122 (1981);

> "Any interference with the freedom of a
> party is simultaneously an interference with
> the freedom of its adherents.
> quoting *Sweeney v New Hampshire*,
> 354 U.S. 234, 259 (1958).

In addition, any claim by the state of increased costs for extension of the deadlines

for individuals, candidates or parties cannot justify the deadlines.  As stated in *Tashjian,*

supra, at 218,

> "... the possibility of future increases in
> the cost of administering the election
> system is not a sufficient basis here for
> infringing appellees First Amendment rights.
>
> "... But the State could not forever protect
> the existing major parties from competition
> solely on the grounds that two major parties
> are all the public can afford."
> *Tashjian*, supra at 218 Citing *Anderson,* supra
> and *Williams*, supra

Any and all deadlines in the final analysis are primarily for the protection of the

Democratic and Republican Parties and nothing more. In *Anderson,* supra, at 802, the Court

stated that

> " In Williams v Rhodes we squarely held that
> protecting the Republican and Democratic
> Parties from external competition cannot
> justify the virtual exclusion of other political
> aspirants from the political arena."

Going further, the Court in *Anderson*, supra, at 802, stated, "... Competition in ideas and

governmental policies is at the core of our electoral process and First Amendment

Freedoms."

This issue was expanded on In Williams, supra, at 39;

> "All political ideas cannot and should not
> be channeled into the programs of our two
> major parties. History has amply proved the
> virtue of political activity by minority, dissident
> groups, which innumerable times have been
> in the vanguard of democratic thought and
> whose programs were ultimately accepted....
> the absence of such voices would be a symptom
> of grave illness in our society."

Because the deadline for signatures and payment of fees, as set out herein, fail to meet a compelling state interest and are certainly not the least drastic means available to satisfy Defendants' needs, Plaintiff respectfully suggests said deadlines violate the rights of Plaintiff and other voters, candidates and parties to free speech and freedom of association as guaranteed by the First Amendment to the Constitution of the United States and as guaranteed against state action by the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

V

**VOTES FOR PLAINTIFF AND OTHER CANDIDATES SHOULD BE COUNTED FOR THEM**

Finally, should the Court decide that Plaintiff and other independent voters may vote in the Primary Election, any votes cast for Plaintiff or other independent candidates or third party candidates in such Primary, should be counted for Plaintiff or such candidates and not as a Democratic or Republican vote. Any other manner in counting votes denies the truth of the votes cast and further supports the two

established parties to the exclusion of a new party or an independent candidate.

Plaintiff obviously has the right to seek his place on the Primary Election ballot and

General Election ballot as either an independent candidate or a third party

candidate, as do others. To give veracity and substance to the electoral process,

votes for Plaintiff rightly should be his. If in casting votes for Plaintiff, those votes

total 5125 or more, as required in the petition process, Plaintiff respectfully

suggests that such total in the Primary Election should be sufficient to place his

name on the General Election ballot. There is no burden on Defendants and each of

them to do so. Since it is presumed all voters are duly registered when they cast

their ballot in the Primary Election legality and registration are not an issue.

 The argument for protecting the Constitutional rights of independent or new and

small party candidates has been made numerous times by the Supreme  Court in

considering our First Amendment rights and those rights as applied to the states by the

Fourteenth Amendment. In *Anderson,* supra, at 793, the Court stated:

> "A burden that falls unequally on new or
> small political parties or on independent
> candidates impinges, by its very nature, on
> associational choices protected by the First
> Amendment. It discriminates against those
> Candidates and – of particular importance
> – against those voters whose political preferences
> lie outside the existing political parties"
> (citation omitted)

The impact of independent voters and independent candidates cannot be ignored,

nor can their ideas and positions on the issues facing our nation be relegated to the dust

heap. Rather, it is incumbent upon the electoral process to follow these issues and allow

those candidates, parties, and most important, those ideas to surface for the consideration

of the voters and the debate that inevitably follows. This public discourse has long been a

hallmark of our democratic society and our Constitutional Republic. Nothing can justify

stifling that discussion today. In fact, it could be argued that with the complexity of our

society and the world in which we live, open debate and discussion is more important

today, than ever before.

Respectfully submitted,

*Larry R. Marshall*

Larry R. Marshall, pro se
Attorney at Law
2198 Clover Hill Rd.
Palm Harbor, FL 34683
727-940-4505 (h)
727-212-1743 ©
lrmarshall37@hotmail.com
Missouri Bar # 18168